### Buell *against* Cook.

Where *A.* and *B.*, on the 13th *November,* 1817, entered into a written agreement, in these words: "It is hereby agreed, by and between *A.* and *B.* that *A.* will let to *B.* the use of the county-house in *L.* from the 1st day of *December,* 1817, to the 10th day of *April,* 1818; and *B.* agrees to pay *A.* the sum of 250 dollars therefor; provided a majority of the county court agree thereto;" it was held, that such writing was not a lease, but merely an agreement to lease, on a precedent condition.

The assent of the county court to such demise could be given only when acting in a body as a court; and must be proved, by record evidence.

In an action for use and occupation, the plaintiff having failed in his attempt to prove a demise from himself to the defendant, the latter was permitted to prove, that he held and occupied, not under the plaintiff, but under a third person.

This was an action of *assumpsit* for the rent of the county-house in *Litchfield,* from the 1st of *December,* 1817, to the 10th of *April,* 1818. The declaration contained two counts; the first was on a special agreement; the second was general, for use and occupation.

The cause was tried, on the general issue, at *Litchfield, February* term, 1822, before *Chapman,* J.

The plaintiff, to support the issue on his part, offered in evidence the following contract, having first proved the execution of it: "It is hereby agreed, by and between *Jonathan Buell* and *Roger Cook,* that said *Buell* will let to said *Cook* the use of the county-house in *Litchfield,* from the 1st day of *December,* 1817, to the 10th day of *April,* 1818; and said *Cook* agrees to pay said *Buell* the sum of 250 dollars therefor; provided a majority of the county court agree thereto. *November* 13*th,* 1817.

*Roger Cook.*
*Jonathan Buell.*"

The plaintiff offered no written evidence of the assent of a majority of the county court to this contract ; but offered parol evidence to prove, that three of the judges, severally and separately, assented to it.   To the admission of such parol evidence the defendant objected ; but the judge admitted it. At t he time of the execution of the contract, and for more than a year next preceding and next succeeding that time, the county court consisted of five judges.

The defendent, on his part, offered to prove, that the county-house, during the period specified in the contract, was the property of the county of *Litchfield*, and that the defendant occupied it under the county, and not under the plaintiff : that, at the time the contract was executed, it was agreed between the plaintiff and defendant, that the plaintiff should obtain from the county court a right to use and occupy the county-house, during such term, and unless he did, the defendant was not to consider himself as in or holding under the plaintiff ; that the plaintiff accordingly made with the judges of the county court a verbal contract for the same ; that said judges, at the term of the court in *December*, 1817, made out and tendered to the plaintiff a lease of the county-house, but the plaintiff refused to accept it, claiming, that it was materially variant from the terms of the contract ; that at the term of the court in *March*, 1818, said judges made out and tendered to the plaintiff another lease, pursuant to the terms of the contract, as claimed by him, but he refused to accept it ; and that, therefore, the contract was relinquished, by the mutual consent of the parties ; and the plaintiff, during the term in question, never acquired any title to the county-house, or any right to transfer the use and occupation thereof. To the adminission of this evidence the plaintiff objected ; and the judge rejected it.

The plaintiff obtained a verdict ; and the defendent thereupon moved for a new trial, on the ground that the evidence offered by the plaintiff was improperly admitted, and that offered by the defendant was improperly rejected.

*Benedict* and *J. W. Huntington*, in support of the motion, contended, 1. That the writing exhibited in evidence by the plaintiff, as the foundation of his action, was not a lease, but an agreement to give a lease in future, on a condition specified. This construction best accords with the terms of the instrument, in their ordinary acceptation, and will effectuate the

intention of the parties, as evinced by the nature of the transaction, and the collateral circumstances of the case. Where the words are *in presenti,* as " I demise"—or the party " shall hold and enjoy"—and the party is immediately put into possession ; this is a present demise. But where the words do not necessarily imply this, and where possession is not given, and there is no other act to manifest such intention, it is merely an executory contract. *Goodtitle* d. *Estwick* v. *Way*, 1 *Term Rep.* 735. *Doe* d. *Coore* v. *Clare*, 2 *Term Rep.* 739. *Doe* d. *Jackson* v. *Ashburner* & al. 5 *Term Rep.* 163.

2. That the approbation of the county court, the condition on which the instrument was to become effective, could not be proved by parol evidence. The county-house was the property of the county of *Litchfield ;* of which the county court, by law, have the care and custody. 2 *Stat.* 85. *May* 1812. The question, then, is, in what manner must the county court make conveyances of property belonging to the county ? Or, in what manner are the acts of the county court, in relation to county property, to be proved ? The answer must be, *always by written evidence.* All the proceedings of a court, acting as such, are matter of record. This results from the very constitution of courts, and the duties devolving upon them. In assenting to an alienation or disposition of the county property, the county court acts *as a court ;* as a body of men, designated, *by a particular name,* to do that service. The statute gives the power, not to the *judges,* but to *the court.* The same phraseology is here used, as is found in all our statutes, which give any powers to the county court ; as in the appointment of attornies, state attornies, conservators, lottery managers, &c. and the approbation of deputy sheriffs. Could any of these acts be proved by parol ?

3. That the defendant's evidence was improperly rejected, because it conduced to prove that the relation of landlord and tenant did not subsist between the plaintiff and defendant. It was also admissible to shew, that the title of the plaintiff had *expired* before the determination of his lease to the defendant. *England* d. *Syburn* v. *Slade*, 4 *Term Rep.* 683. *Doe* d. *Jackson* v. *Ramsbotham*, 3 *Mau. & Selw.* 516. *Merwin* v. *Camp*, 3 *Conn. Rep.* 48.

*P. Miner*, contra, contended, 1. That the writing given in evidence by the plaintiff, was a lease. It was not intended to have immediate operation ; and this is the reason, why

*Litchfield,*
*June,*
*1822.*

Buell
*v.*
Cook.

words *in presenti* were not used. A present interest was coveyed, to take effect in future. No other act *inter partes* was to be done to perfect the lease; nor was any future lease to be given. This was not the case in *Goodtitle* d. *Estwick* v. *Way*, 1 *Term Rep.* 735. *Doe* d. *Coore* v. *Clare*, 2 *Term Rep.* 739. and *Doe* d. *Jackson* v. *Ashburner* & al. 5 *Term Rep.* 163.

2. That parol evidence was properly received to prove the assent of "a majority of the county court." In giving their assent, they did not act as a court, in the discharge of official duties legally devolving upon them. Though the county courts in the state are entrusted with the care of the county property, in their respective counties; yet in this case, no state of facts is shewn from which it appears, that any act of the *Litchfield* county court, was, *by law*, necessary to give effect to the lease in question. The necessity of any ulterior act, was created, exclusively, by the agreement of the parties; the authority to do the act emanated from the same sources; and to that agreement alone are we to look, to determine by whom, and in what manner, the act required, is to be performed, and how it is to be proved. Now, the agreement does not provide, that the *county court* shall do the act: if it had done, it might have been more plausibly argued, that the court must act, and that their acts must be proved, in the usual way. But the stipulation is, that "a *majority* of the county court"—*i. e.* of the persons composing the court—shall agree to the demise. If they acted not as a court, deriving their authority from the law, but as individuals, designated by the parties, to do a particular act, it is clear, that such act may be proved like any other matter *in pais.*

But assuming this ground to be untenable, and admitting that the act in question was to be performed by the county court, in the exercise of the authority given them by law, as conservators of the county property; still it does not follow, that this was a *judicial* act, and a matter of *record.* Is the diversified agency, delegated to the county court, of taking care of the county property, to be exercised only in *open court;* and is every direction given, to be *recorded* by the clerk? Such an agency would be anomalous in its character, and of very difficult execution.

3. That the evidence offered by the defendant, was properly excluded. The object of the defendant, and the tendency of the evidence, were, to prove, that the plaintiff had no title. But the plaintiff never contracted, that he had a title;

*Litchfield,*
*June,*
*1822.*

Buell
*v.*
Cook.

whether he had or not, was, therefore, immaterial. Besides, the case comes within the rule of law, that a tenant shall not be permitted to impeach the title of his landlord. *Cooke* v. *Loxley,* 5 *Term Rep.* 4. *Richards* v. *Holditch,* 2 *Selw. N. P.* 1311. *Driver* d. *Oxenden* & al. v. *Laurence,* 2 *Bla. Rep.* 1259. 1261. *Merwin & al.* v. *Camp* & al. 3 *Conn. Rep.* 35. *Doe* d. *Knight* v. Lady *Smythe,* 4 *Mau. & Selw.* 347. Nor will the the tenant be permitted to prove, that his landlord's title has *expired,* unless he has solemnly renounced holding under him. *Balls* v. *Westwood,* 2 *Campb.* 11. In the present case, however, the defendant did not offer the evidence in question, to prove, that the plaintiff's title had expired, but that he never had any title.

HOSMER, Ch. J. In this case, I am of opinion, that the court erred, in the admission of the writing exhibited in evidence by the plaintiff; and in the rejection of the testimony, offered by the defendant.

1. The writing was not a lease, but merely an agreement to lease, on a precedent condition, which never took effect.

Whether it was a lease, or an agreement to lease, must depend on the intention of the parties, as it is to be collected from the whole of the written instrument. 1 *Bac. Abr.* 160, 1. *Goodtitle* v. *Way,* 1 *Term Rep.* 735. *Roe* v. *Ashburner,* 5 *Term Rep.* 163. The words, although a part of them may import a present demise, or a part may imply a future lease, are not conclusive ; but the *intent* in this, as in every other contract, must be eviscerated, by a reasonable construction of all the expressions used. Viewing the writing, not in detached parts, but as a whole, directed to a definite object, I am incapable of entertaining a doubt, as to its genuine intendment. It commences with the phrase, " It is hereby agreed," and following these introductory words, it next declares, " that said *Buell* will let to said *Cook,* the use of the county house," which words imply, not that he *does* demise, but that, in future, he will do it ; and *Cook,* having agreed to pay therefor 250 dollars, the instrument closes with a condition precedent ; " provided a majority of the county court agree thereto." This expression, by grammatical, as well as by legal construction, qualifies all the antecedent matter to which it is applicable, and implies, that *Buell* will, in future, demise, and *Cook* will pay a specified rent, if the county court give the agreement their sanction. Both these antecedents precede the proviso, without the intervention of any stop, except a

comma ; and the condition refers to them equally. If any difference were attempted, it would be most rational to say, that *Buell* wanted the approbation of the court, as to the demise of the property ; for if he had the authority to lease it, he would scarcely ask them to approve of the rent to be reserved. The condition is, in the writing, manifestly out of place ; and, expressed in a manner the most intelligible, to reach the purpose obviously intended, the covenant would thus read : " It is hereby agreed, provided a majority of the county court assent thereto, that I, *Jonathan Buell*, will let to you, *Roger Cook*, the county-house, from the 1st of *December*, 1817, to the 10th of *April*, 1818 ; and that I, *Roger Cook*, will pay therefor 250 dollars." This construction is confirmed, by the consideration, that the subject intended to be demised, was not the property of *Buell*, but belonged to the county ; and that " the county courts, in their respective counties, are authorised and directed, to take care of all the property, real and personal, which belongs to such county ; and the same to let, demise and manage, for the benefit of the county." (*Stat. p.* 141.) Without the licence of the county court, *Buell* could not lease the county-house, and that this was perfectly understood, by the parties, is very apparent, when their agreement was expressly suspended, for its inception, on the approbation of the court. No other reason has been, or can be, assigned, for the reference made to the court, by the proviso, in the contract. If the right *to lease* had existed in *Buell*, he would as soon have referred to the parish clerk for his assent to the disposition of the county-house, as to the county court. On this foundation, it is very perceptible, that *Buell* could not make a lease of another's estate ; but if he contemplated a demise, he would agree to do this act in future, provided, by application to the general agent, he could obtain permission. Assuming that he conducted with common sense and common discretion, the proper presumption, in absence of proof to the contrary, it is convincingly manifest, that the writing was intended to be a conditional agreement, and not a lease ; and hence there exists every reason, for giving to the words of the instrument, their usual and popular signification.

A recurrence to the cases on this subject, is not necessary to extract from them the principle of construction. This is most palpable and indisputable, and has been already expressed. The! application of the rule, if any case precisely like

the one before us can be found, may guide to a right exposition of the words in the writing under discussion; but the citation of a host of decisions, differing in any essential feature from the case before the court, can subserve no valuable purpose. After a reference to numerous cases, and discussing their construction, we are brought back to these simple questions; what was the object and intent of the parties? Did they intend there should be a lease of the county property, by the writing which they have signed, or was it their intention to agree on the terms of a demise, if the county court should lend their sanction to the agreement? The solution of these enquiries must depend on the words, the effects and consequences, and the reason and spirit of the writing, in all its parts; and having no hesitation on this point, I shall leave it without further observation.

The agreement contained in the above writing was not carried into effect, because it never received the approbation of the county court. The sanction of the court could alone be given, when acting in a body; and the only evidence of their act, on this, as on all other subjects, is the record of their transactions. It has been said, that by the expression, "a majority of the county court," was meant, the personal approbation of the greater number of the judges. Much may be said on this question, on either side, as stress is laid on the word *majority*, on the one hand, and on the words *the county court*, on the other; that is, if the words are tenaciously adhered to, and the spirit and intent of the contract, is abandoned. Waiving a particular discussion, founded merely on the meaning of the words above-mentioned, and declaring it as my opinion, that it is no unusual phraseology, when the determination of a court acting judicially is spoken of, for persons to say, "the majority of the court," thereby intending to express the thought, that the question was decided in a particular manner, I will place my opinion on a surer ground. The agreement was suspended on the approbation of those, who had right to approve the leasing of the county property, and not of those, who had no such right. Now, who had this right; and in what manner must their approbation be evinced? I answer, the county court; and their record is the only mouth, through which they can speak. To me it seems little less than infatuation to assert, that the property of the county, of every description, is confided literally to the county court; and yet that this is not a united body, deliberating and acting

together, each one of the judges aiding the reflections of the other, and the thoughts of each being filtrated through the minds of all, and thus producing a wise result, but, that this county court, is, the judges, acting separately, without deliberation, without intercommunication, in haste, or at the corners of the street, and when their separate opinions are thus obtained, that there is no permanent memorial of them, but that they are to be proved *ore tenus* ; and by the aid of arithmetic, that the result is to be ascertained. I cannot yield my assent to a pretension entirely unnecessary, and which jeopardizes the county property ; is pregnant with manifold abuses; and is recommended, by no possible benefit, to countervail its numerous disadvantages. On the contrary, it is manifestly clear, when there is any act, not ministerial, confided to the discretion of several persons, that they must jointly act and deliberate. This is the case with auditors, referees, committees and arbitrators. And emphatically, when the county court is to transact business, not judicial, but which requires the exercise of discretion, as in the ascertainment of the property belonging to a person who intends making application for a pension, they must act unitedly, and their doings be made a matter of record.

2. The rejected testimony should have been admitted. The written agreement not having been approved, by the county court, nor any lease of the county-house given by *Buell* to the defendant, he had right to prove, that he took and retained possession of it under the county, and not under the plaintiff. The title of the plaintiff, I admit, could not be questioned, by the defendant, if the relation of landlord and tenant subsisted between them. This fact was in issue ; and the plaintiff was unable to establish it, by the written agreement. What, then, should prevent the defendant from shewing, that he took possession of the county-house under the county, and became their tenant? Strike the written contract out of existence, and inefficacious as it was, it must thus be considered, it left the defendant free to prove, that he did not go into possession under the plaintiff, which he would do effectually, by evincing that he possessed and occupied by permission of the county.

PETERS and BRAINARD, Js. were of the same opinion.

CHAPMAN and BRISTOL, Js. dissented.

New trial to be granted.